UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELISSA DEROCHER,

     Plaintiff,

     v.

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

Case No. 17-11858

Arthur J. Tarnow
United States District Judge

Stephanie Dawkins Davis
United States Magistrate Judge

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 15, 16)**

## I.    PROCEDURAL HISTORY

A.    <u>Proceedings in this Court</u>

On June 12, 2017, plaintiff Melissa Derocher filed the instant suit. (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Arthur J. Tarnow referred this matter to the undersigned for the purpose of

reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a

period of disability, disability insurance benefits, and supplemental security

income benefits. (Dkt. 3). This matter is before the Court on cross-motions for

summary judgment. (Dkt. 15, 16).

B.     Administrative Proceedings

Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income on September 19, 2013, alleging disability beginning on November 2, 2011.  (Tr. 20).[1]  The claims were initially disapproved by the Commissioner on January 23, 2014.  (*Id.*).  Plaintiff requested a hearing and on February 2, 2016, plaintiff appeared via video with counsel, before Administrative Law Judge ("ALJ") Patricia E. Hurt, who considered the case *de novo*.  (Tr. 20-34).  In a decision dated March 1, 2016, the ALJ found that plaintiff was not disabled.  (Tr. 34).  Plaintiff requested a review of this decision.  (Tr. 14).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on April 7, 2017, denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The Administrative Record appears on the docket at entry number 11.  All references to the same are identified as "Tr. "

## II.    ALJ FINDINGS

Plaintiff, born August 20, 1972, was 39 years old on the alleged disability

onset date.  (Tr. 32).  She lives with her son, who was 18 years old at the time of

the hearing, and she has a high school education.  (Tr. 50, 52).  She has past

relevant work as a cashier.  (*Id.*).  She claims disability due to hypertension,

seizures, back pain, depression and gout.  (Tr. 90).  The ALJ applied the five-step

disability analysis and found at step one that plaintiff had not engaged in

substantial gainful activity since November 2, 2011, the alleged onset date.  (Tr.

22).  At step two, the ALJ found that plaintiff's degenerative disc disease of the

lumbosacral spine requiring an L5-S1 discectomy and fusion, gout, depression and

anxiety were "severe" within the meaning of the second sequential step.  (Tr. 22).

However, at step three, the ALJ found no evidence that plaintiff's impairments

singly or in combination met or medically equaled one of the listings in the

regulations.  (Tr. 24).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC")

as follows:

> After careful consideration of the entire record, I find that
> the claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b)
> and 416.967(b), i.e., she can lift/carry twenty pounds
> occasionally and ten pounds frequently, sit six hours and
> stand/walk six hours, and can push/pull as much as she
> can lift or carry.  However, she can use her right upper
> extremity frequently to operate hand controls, reach

3

overhead and finger.  The claimant can frequently climb
ramps and stairs, occasionally climb ladders, ropes or
scaffolds, frequently balance, and occasionally stoop,
kneel, crouch and crawl.  She can occasionally work
around unprotected heights and moving mechanical parts.
The claimant cannot operate a motor vehicle due to the
side effects of her medications.  She can tolerate
occasional exposure to humidity, wetness, extreme cold
and vibration.  The claimant can perform simple and
routine tasks, and make simple, work related decisions.
She can frequently respond appropriately to supervisors,
co-workers and the public.  The claimant can tolerate
only simple changes in a work-related routine (such as
changing the time for a lunch break).

(Tr. 26).  At step four, the ALJ found that plaintiff was unable to perform any past

relevant work.  (Tr. 32).  At step five, the ALJ denied plaintiff benefits because she

found that there were jobs that exist in significant numbers in the national economy

that plaintiff can perform.  (Tr. 32).

## III.  DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").

"However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of*

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.     <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis set forth at 20 C.F.R. §§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the plaintiff can perform.  (*Id*.).  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding rejecting the existence of disability, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

　　　　If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

　　　　C.　　Analysis and Conclusions

　　　　　　　1.　　Step Two

　　　　Plaintiff first argues that the ALJ failed to comply with 20 C.F.R. §

404.1545(a)(2) because she failed to address whether plaintiff's E. coli septicemia,

cholecystitis, and sequelae of those conditions were severe impairments.  (Dkt. 15,

at p. 6).  She says the ALJ also failed to address limitations caused by those

impairments, and did not address whether these conditions could reasonably be

expected to last for twelve consecutive months.  Plaintiff contends that her septicemia or gall bladder conditions spanned at least ten months, beginning with her hospitalization on May 21, 2015 (hospitalization for abdominal pain with no diagnosis which plaintiff claims shows an ongoing disease process), through her gall bladder surgery in January 2016, and through the administrative hearing on February 6, 2016.  (*Id.* at p. 8-9).  Furthermore, new evidence suggests plaintiff continued to have complications in March 2016.  (*Id.* at p. 9).  Plaintiff contends that if her conditions were considered to be severe the ALJ would have found plaintiff disabled.  (*Id.* at p. 10).

According to the Commissioner, the ALJ did assess whether plaintiff's septicemia, cholecystitis, and the sequelae of those conditions were severe, and found that the impairments did not meet twelve month durational requirement. (Dkt. 16, at p. 5).  The Commissioner contends that there is no evidence that plaintiff's conditions were expected to last at least twelve months.  The Commissioner also notes that evidence submitted after the hearing to the Appeals Council (treatment notes from October 2015 through March 2016) cannot be considered part of the record for purposes of reviewing substantial evidence.  (*Id.* at p. 7, citing *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)).

At step two of the sequential evaluation, the ALJ must consider whether a claimant's medically determinable impairment is a severe impairment and whether

the impairment(s) meet the twelve month durational requirement in 20 C.F.R.

§ 404.1509.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 188 (6th Cir. 2009).  The applicant bears the burden of establishing the existence within the administrative record of objective medical evidence suggesting that the applicant was "disabled" as defined by the Act.  In order to be classified as severe, an impairment or combination of impairments must significantly limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities, defined in the regulations as "the abilities and aptitudes necessary to do most jobs," include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in routine work settings.  An ALJ's failure to find an impairment severe at step two of the sequential analysis is not reversible error if the ALJ found another impairment severe and thus continued with the five-step evaluation.  *See e.g.*, *Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008).

By way of background on these conditions, plaintiff was hospitalized from September 9 to September 23, 2015 following the onset of abdominal pain attributed to E. coli septicemia, an acute urinary tract infection, and acute cholecystitis. (Tr. 23). During that admission, she experienced multiple complications including atrial fibrillation and acute renal failure (the sequelae). Her hospital discharge summary recommended surgery to remove her gallbladder in four to six weeks. (Tr. 1234). Plaintiff had a drain tube installed until she could have the surgery, and plaintiff testified that she had the surgery in January 2016. (Tr. 45, 65). The undersigned will refer to these conditions collectively as "septicemia and sequelae."

Contrary to plaintiff's contention, the ALJ did consider plaintiff's septicemia and sequelae at Step Two, and determined they were nonsevere impairments because they have not lasted or are not expected to last a continuous period of at least twelve months. Specifically, the ALJ stated,

> The record also reflects that Ms. Derocher required hospitalization from September 9 to September 23, 2015 following the onset of abdominal pain attributed to E.coli septicemia, an acute urinary tract infection and acute cholecystitis. During that admission, she had multiple complications, including atrial fibrillation and acute renal failure. This admission was followed by inpatient rehabilitation due to her deconditioned state. That treatment was expected to last two to three weeks according to treatment notes through October 1, 2015. Her hospital discharge summary noted a recommendation for surgery to remove her gallbladder (a

cholecystectomy) in about four to six weeks (Exhibits
16F-17F).  Ms. Derocher testified at her February 2, 2016
hearing that she underwent that surgery in January 2016,
and that she still has not fully recovered from her
September 2015 hospitalization.  Unfortunately, the
claimant did not submit any medical records of treatment
since October l, 2015.  Based on the submitted evidence,
I concluded that her conditions of E. coli septicemia, an
acute urinary tract infection and acute cholecystitis with
related complications are not severe because they have
not lasted and are not expected to last a continuous
period of at least twelve months.

(Tr. 23-24).

To the extent plaintiff is arguing that the ALJ should have found her

condition to be severe, the argument lacks merit.  As noted above, Sixth Circuit

precedent establishes that failure to find an impairment severe at step two of the

sequential analysis is not reversible error if the ALJ found another impairment

severe and thus continued with the five-step evaluation.  *See e.g.*, *Fisk v. Astrue*,

253 Fed. Appx. 580, 584 (6th Cir. 2007); *Anthony v. Astrue*, 266 Fed. Appx. 451,

457 (6th Cir. 2008)  If the ALJ continues with the remaining steps, any error at

step two is harmless, so long as the ALJ considered the effects of all medically

determinable impairments, including those deemed nonsevere.  *See e.g.*, *Cobb v.

Colvin*, 2013 WL 1767938 at *4 (D. Kan. 2013) ("The Commissioner is correct

that the failure to find that additional impairments are severe is not in itself cause

for reversal.  But this is true only so long as the ALJ considers the effects of all of

the claimant's medically determinable impairments, both those he deems severe

13

and those not severe.") (internal quotation marks omitted); *Jackson v. Astrue*, 734

F. Supp. 2d 1343, 1361 (N.D. Ga. 2010) (Where ALJ identified one severe

impairment at step two, the failure to identify additional severe impairments at step

two was harmless error case where the ALJ considered all of the plaintiff's

impairments at other steps as demonstrated by discussion of testimony and medical

history.).

 Here, the ALJ found some impairments severe and considered all of

plaintiff's impairments, severe and nonsevere (including septicemia and sequelae),

later in the decision.  (*See* Tr. 26-32).  Therefore, any error in determining that

these impairments are nonsevere is harmless.

 Plaintiff also argues that because she went to the hospital in May 2015 for

abdominal pain, it can be inferred that her gallbladder issue and sequelae began in

May and lasted through her gallbladder surgery in January 2016, and thus was

expected to last at least ten months.  This argument is also unavailing.  First,

plaintiff cites no authority or anything in the record to demonstrate that her May

2015 abdominal pain was directly connected to the conditions for which she was

hospitalized in September.  The progress note dated May 21, 2015 states that

plaintiff was seen in the ER the day before for abdominal pain in the upper left

quadrant; the pain was worse with movement.  (Tr. 1400).  Physicians did an x-ray

and EKG test.  Plaintiff was assessed with left rib pain and depression/anxiety (she

reported that she had just learned that her father was diagnosed with stage 4 lung cancer, and she was very emotional).  (*Id.*).  This progress note does not indicate that plaintiff was suffering from a problem with her gallbladder or any of the other issues which surfaced in September 2015.  Additionally, plaintiff testified that her hospitalization for her gallbladder took place in September, not May 2015 (Tr. 65), and the records from the September hospitalization do not mention the May 2015 hospitalization.  Rather, they indicate that plaintiff's abdominal pain started two days before her hospitalization on September 9, 2015.  (Tr. 1239).

Furthermore, even if plaintiff's condition began in May 2015, she had the gallbladder surgery <u>eight months</u> later in January 2016; and even if she still had pain from the surgery into February 2016 (Tr. 45), this does not show that her condition was expected to last for twelve consecutive months.  Through February 2016, plaintiff would have been under the condition for, at most, 9 months. Additionally, as discussed more fully below, although plaintiff submitted more records after the ALJ issued her decision, these records do not establish that these conditions lasted or were expected to last twelve consecutive months.[2]  Therefore, the undersigned concludes that the ALJ did not commit any reversible error at Step

---

[2] The Commissioner contends that the evidence submitted to the Appeals Council cannot be used to determine whether substantial evidence supports the ALJ's determination.  (Dkt. 16, at p. 7) (citing *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  The Commissioner is correct. Yet, it is noteworthy that even if these later records could be considered, they do not indicate that plaintiff's conditions lasted or were expected to last twelve consecutive months.

Two, and in light of the medical evidence and dates of treatment, the undersigned finds the ALJ's determination here to be supported by substantial evidence.

      2.     Opinion Evidence

          a.     Dr. Malik

Plaintiff argues that the ALJ erroneously gave little weight to the opinion of her treating physician, Dr. Malik.  According to plaintiff, the ALJ failed to address whether Dr. Malik's opinion is entitled to controlling weight, and the ALJ's reasons for giving the opinion little weight are not good reasons.  (Dkt. 15, at p. 10-11).  While the ALJ discussed plaintiff's conservative treatment, the ALJ also noted her various hospitalizations.  (*Id.* at p. 12).  The plaintiff notes that the ALJ did not cite any excerpt from doctors Prakash or Akbar to demonstrate inconsistency with Dr. Malik's opinion, and thus the ALJ did not make clear the reasons for the weight given to the opinion.  (*Id.*).  Further, Dr. Malik's opinion is supported by the opinions of Dr. Prakash and Dr. Akbar.  (*Id.* at p. 13-14).

The Commissioner argues that substantial evidence supports the ALJ's evaluation of Dr. Malik's opinion.  The ALJ comported with the regulations in that she explained what is required to give an opinion controlling weight: consistency and supportability.  The ALJ then found the opinion inconsistent with record and treatment notes.  (Dkt. 16, at p. 10).  According to the Commissioner, the ALJ is correct on this point.

In weighing Dr. Malik's opinion, the ALJ stated,

> Dr. Malik, the claimant's treating physician until 2015,
> opined in December 2013 that his patient has a residual
> functional capacity for less than a full range of sedentary
> work (Exhibit 8F).  The medical opinion of a treating
> source is given controlling weight if it is well-supported
> and not inconsistent with the other substantial evidence
> in the case record.  However, controlling weight may not
> be given unless the opinion is well-supported by
> medically acceptable clinical and laboratory diagnostic
> techniques (20 CFR §§404.1527(d)(2) and 416.927( d)(2)
> and Social Security Ruling 96-2p ).  I gave little weight
> to this December 2013 assessment because it was not
> supported by Dr. Malik's own objective findings of
> intermittent joint symptoms and the conservative nature
> of his treatment (Exhibits 1F-3F, 11F and 13F), and was
> not consistent with the record as a whole, including the
> objective findings of treating rheumatologist Dr. Sanjeev
> (Exhibits 7F and 12F), and of current primary care
> physician Dr. Akbar (Exhibit 15F).

(Tr. 31).[3]  Dr. Malik opined that plaintiff could lift less than ten pounds, could

stand/walk less than two hours in an eight hour workday, and could sit for less than

six hours.  (Tr. 1061, opinion dated December 18, 2013).  Dr. Malik expected the

limitations to last 3-4 years and that the limitations would disrupt a regular work

schedule for about 120 hours per month.  (*Id.*).  Finally, Dr. Malik noted that

---

[3] The ALJ cites Exhibit 1F as one of a few exhibits containing Dr. Malik's treatment
records.  A review of the record at Exhibit 1F contains only a few treatment notes with Dr.
Malik's name included in them.  Neither party contests that Exhibit 1F contains Dr. Malik's
treatment notes.  It appears that many of the records in the exhibit are signed by a physician's
assistant, who perhaps works for Dr. Malik.  (*See, e.g.*, Tr. 382).  The undersigned has
considered only records attributed to Dr. Malik.

plaintiff has chronic pain, mostly in her large joints: shoulders, knees, neck, and back with severe gout affecting various joints.

The opinion of a treating physician should be given controlling weight if it is: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2). Once an ALJ has determined that a treating source opinion is not entitled to controlling weight, the ALJ must give good reasons for the weight accorded to the opinion. The reasons provided must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). The ALJ is to discuss certain factors, which include, (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, and (5) the specialization of the treating source. *Id.; see also Wilson,* 378 F.3d at 544; 20 C.F.R. § 404.1527(c). Failure to analyze a treating source opinion under the two-prong controlling weight test amounts to the failure to provide good reasons for giving that opinion less than controlling weight. *Gayheart* at 376-77.

"Violation of the rule constitutes harmless error if the ALJ has met the goals of the procedural requirement—to ensure adequacy of review and to permit the claimant to understand the disposition of his case—even though he failed to comply with the regulation's terms." *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 440 (6th Cir. 2010) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004). An ALJ may meet those goals by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record. *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006) (no error in ALJ's failure to explain weight given to two treating physicians or failure to give good reasons for discounting them where ALJ thoroughly explained other medical evidence that indirectly attacked the consistency of the treating physicians' opinions). In *Coldiron*, the court held that even if the ALJ's stated reasons for rejecting a physician's opinion were not "good reasons," the ALJ sufficiently indirectly attacked the supportability and consistency of the opinion such that any error was harmless. 391 Fed. Appx. at 440-41. The court found that the ALJ indirectly attacked the consistency of the opinion that the plaintiff could not lift or carry any weight at all, when the ALJ explained that the state agency physicians found that the plaintiff lacked a "diminished capacity for lifting/carrying." *Id.* And although the physician stated that plaintiff could walk for only twenty minutes in an eight-hour workday and his

ability to sit was limited, other medical evidence showed that he could stand and sit for six hours out of eight. *Id.* at 441. Further, the plaintiff's own statements also undermined the doctor's opinion. *Id.*

Here, the ALJ gave the opinion little weight, and thus not controlling weight. Having discussed the inconsistencies between Dr. Malik's opinion and the other evidence in the record, the ALJ did not err in determining that the opinion was not entitled to controlling weight.[4] *See Wilson*, *supra*. The ALJ is correct that Dr. Malik's opinion is inconsistent with many of his treatment records. For example, many records do not record signs of joint swelling or tenderness. (Tr. 379, 381, 384, 400,402, 408, 410, 492, 513, 518, 523, 544, 549, 588, 615, 628, 647, 653, 658, 679, 1119, 1133, 1138, 1146, 1154, 1162, 1168). Dr. Malik also noted no joint pain or arthralgias on a number of occasions. (Tr. 384, 400, 408, 492, 513, 518, 537, 544, 549, 573, 588, 628, 679, 1133, 1146, 1154, 1168). These records also show that Dr. Malik prescribed medication, but do not suggest other, less

---

[4] Plaintiff argues that because the ALJ did not cite to particular excerpts in Dr. Malik's treatment notes to compare with specific excerpts in Drs. Prakash's and Akbar's treatment notes, the ALJ decision is not clear as to the reason for the weight determination. (Dkt. 15, at p. 11-12). However, the fact that the ALJ did not cite to every piece of evidence in the record does not amount to reversible error, as it is well settled that "[a]n ALJ can consider all the evidence without directly addressing in [her] written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006). The ALJ cited Drs. Malik, Prakash, and Akbar's treatment records by citing the Exhibits in which their notes are found, and the fact that the ALJ did not provide pin citations within those records does not amount to reversible error.

conservative treatment from Dr. Malik.  These records do not support the
contention that plaintiff is severely limited because of joint pain and gout.

The ALJ also properly found that Dr. Malik's opinion is inconsistent with
his conservative treatment of plaintiff's conditions.  *See Lester v. Soc. Sec. Admin.*,
596 Fed. Appx. 387, 389 (6th Cir. 2015) (Finding that ALJ properly discounted
treating physician's opinion where it was inconsistent with his own treatment
records, which showed conservative treatment); *Kepke v. Comm'r of Soc. Sec.*, 636
Fed. Appx. 625, 631 (6th Cir. 2016) (Stating that the fact that a treating physician
administered conservative treatment is a "good reason" for discounting the
opinion).  At most, Dr. Malik prescribed medication and referred plaintiff to
specialists.  (*See* Tr. 387, 662).  Plaintiff did go to the hospital in February 2012 for
treatment for a gout flare-up, but it appears that the flare was due to plaintiff's
noncompliance with gout medication.  (Tr. 935).  Because the flare-up was due to
noncompliance, it would be an inaccurate characterization to say that this hospital
visit constituted non-conservative treatment from Dr. Malik.  Moreover, it does not
appear that Dr. Malik was involved in this treatment or ordered plaintiff to go the
hospital.  Plaintiff also contends that the treatment for her osteomyelitis consisting
of PICC line antibiotics, which is not conservative treatment, supports Dr. Malik's
opinion.  Yet, a physician from the hospital admission during which the antibiotics
were administered stated, in regard to her gout, that plaintiff was noncompliant

with medication and that she had made herself sick.  (Tr. 1089).  Regarding

plaintiff's finger infection, the physician noted that there may be osteomyelitis, but

this condition in her finger does not support Dr. Malik's extreme postural and

exertional limitations.  (Tr. 1089).  Further, Dr. Malik did not base his opinion on

osteomyelitis, although he did treat plaintiff with steroid injection to the finger.

(Tr. 1061, 1086).  Finally, plaintiff points to two hospital visits for her back on

March 30, 2015, and May 20, 2015.  However, Dr. Malik did not treat plaintiff for

her back and did not base his opinion on her back.  (*See* records discussed above).

Further, Dr. Malik was no longer treating plaintiff at the time of these visits (Tr.

31, noting that Dr. Malik was no longer plaintiff's physician in 2015; Tr. 353,

plaintiff's brief to the ALJ), and so this treatment cannot fairly be attributed to Dr.

Malik.  Even if these hospital visits could be said to constitute non-conservative

treatment from Dr. Malik, they do not outweigh the other substantial evidence on

which the ALJ made the weight determination as discussed herein.

Dr. Malik's opinion is also inconsistent with, and not supported by, the other

medical evidence in the record.  Plaintiff treated with rheumatologist Dr. Prakash.[5]

In August 2013, Dr. Prakash noted that plaintiff's gait was normal, that big

swellings were present over the olecranon processes bilaterally, but also noted that

---

[5] The ALJ referred to Dr. Sanjeev and cited to records from Dr. Sanjeev Prakash.  It
appears the ALJ simply mistakenly referred to this physician by first name rather than last.

she had not been taking her allopurinol regularly, and that is likely why she had not

responded well to the medication.  (Tr. 1055).  On September 23, 2013, while Dr.

Prakash noted that plaintiff still had tenderness and swelling in multiple joints, he

also noted that plaintiff had not had any acute gout.  (Tr. 1053).  Dr. Prakash

prescribed meloxicam and allopurinol.  (*Id.*).  In February 2014, Dr. Prakash noted

that plaintiff's joint pain had been somewhat better, she had not had any acute

gout, she had swelling and tenderness in the right second PIP joint and right second

digit, but only mild swelling in some of the other joints.  (Tr. 1178).  Dr. Prakash

assessed gouty arthropathy and prescribed medication.  (*Id.*).  While Dr. Prakash's

notes indicate some swelling in the joints, and assessed gouty arthopathy, these

records do not support Dr. Malik's extreme limitations as they do not indicate that

plaintiff is functionally limited or suffering so severely that she cannot perform

work functions.

Dr. Akbar's treatment records also do not support, and are inconsistent with,

Dr. Malik's opinion.[6]  In August 2015, Dr. Akbar noted plaintiff's joint pain and

swelling and limited motion in her elbows, but also noted as to her elbow pain and

swelling that the pain was dull and relieved by nonsteroidal anti-inflammatory

---

[6] Plaintiff submitted more of Dr. Akbar's treatment records after the hearing and argues
for a sentence six remand for consideration of these records and others.  However, as is
explained more fully below, the additional records are not material as they would not likely
change the ALJ's decision here, leading the undersigned to conclude that the case should not be
remanded for consideration of these records.

medication. (Tr. 1207). Further, while plaintiff had a slow gait likely to due to pain, Dr. Akbar suggested regular aerobic exercise to help reduce her stress. (Tr. 1210). Two weeks later Dr. Akbar noted a normal gait and station, and renewed her gout medication. (Tr. 1215). That plaintiff had some joint pain or swelling, and was assessed with gout by both Drs. Prakash and Akbar, does not itself support Dr. Malik's severe restrictions. The ALJ acknowledged plaintiff's gout and considered the impairment to be severe. (Tr. 22). These records are not consistent with Dr. Malik's opinion as they do not suggest that plaintiff cannot work because of her joint problems.

Having determined that Dr. Malik's opinion was entitled to less than controlling weight, the ALJ then must consider specific factors to determine what weight should be given to the opinion. The ALJ here acknowledged the treating relationship between plaintiff and Dr. Malik, and in discussing the inconsistency and lack of supportability between Dr. Malik's opinion and treatment notes and other medical records, the ALJ attacked both the consistency and supportability of the opinion. Having done so, the ALJ provided good reasons for the weight determination. While the ALJ did not specifically address the nature and extent of the treating relationship, or any specialization in which Dr. Malik practices, this failure is harmless. As the Sixth Circuit held in *Francis v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 802, 805 (6th Cir. 2011) (quoting *Friend v. Comm'r of Soc.*

*Sec.,* 375 Fed. Appx. 543, 551 (6th Cir. 2010)), the treating physician rule is not "a procrustean bed, requiring an arbitrary conformity at all times."  In *Francis,* the ALJ did not discuss several of the factors set out in 20 C.F.R. § 404.1527(d)(2), but the court held that he did not have to do an exhaustive factor-by-factor analysis.  *Id.* at 804-05.  As long as the goal of the regulation is met, i.e. providing a clear understanding of the reasons for the weight given to a treating physician's opinion, any procedural error will be harmless.  As demonstrated above, the goal of the regulation has been met here.

For the foregoing reasons, the undersigned finds the ALJ's weight determination here is supported by substantial evidence, and thus should be affirmed.

### b.   Dr. Brady

Plaintiff argues that although the ALJ gave great weight to the opinion of Dr. Brady, the ALJ failed to incorporate limitations noted by Dr. Brady in the RFC.  (Dkt. 15, at p. 23).  Dr. Brady found abnormalities in plaintiff's ability to concentrate and stated that she may often be distracted.  Plaintiff insists that the RFC does not account for these limitations and the ALJ does not reconcile these limitations with the RFC.  Dr. Brady's opinion indicates that plaintiff cannot work on a regular and continuing basis, i.e. eight hours a day, five days a week.  (*Id.* at p. 25).

The Commissioner argues that the ALJ properly incorporated Dr. Brady's opinion into plaintiff's RFC.  (Dkt. 16, at p. 22).  The Commissioner states that the ALJ expressly adopted Dr. Brady's concentration limitations which were translated into vocational limitations by State agency physician Dr. Robert Newhouse.  (*Id.* at p. 22, citing Tr. 31, 103).  The ALJ limited plaintiff to jobs with simple and routine tasks, and simple decision-making, which is exactly what Dr. Newhouse opined after discussing Dr. Brady's opinion.  (*Id.* at p. 23).

Plaintiff attended a consultative examination with psychologist Dr. Brady. (Tr. 1063-66).  In evaluating Dr. Brady's opinion, the ALJ stated,

> When examined consultatively on January 16, 2014 by Michael Brady, Ph.D., Ms. Derocher reportedly drove herself to the appointment.  She alleged having depression for most of her life, with current symptoms of occasional feelings of worthlessness, anhedonia, decreased concentration, sleep disturbances and irritability.  While she was taking medications such as Alprazolam and Viibryd, she advised that she had not had any mental health services or psychiatric hospitalizations.  During this evaluation, the claimant acknowledged that she interacted with two close friends whom she talked to almost daily, and was very close to family members.  She stated that she spent time during the day cleaning the house and watching television, sharing cooking and cleaning responsibilities with her son.  She exhibited good hygiene and personal grooming, a depressed mood, and well organized thoughts.  She did not report any suicidal ideation, hallucinations or delusions.  The claimant reported that her sleep patterns were restless due to pain.  The claimant appeared well oriented with some deficits of memory and concentration.  The examiner diagnosed a major

depressive disorder, recurrent and moderate.  He opined that she had a fair ability to relate and interact with others including coworkers and supervisors.  While her ability to understand, recall and complete tasks and expectations did not appear to be impaired, she did have some impairment of her ability to maintain concentration.  He added that she may often be distracted and her effectiveness and performance will likely be limited or slowed, and her ability to withstand the normal stressors associated with a workplace setting is somewhat impaired (Exhibit 9F).

. . . .

Consultative examiner Dr. Brady opined that Ms. Derocher had a fair ability to relate and interact with others including coworkers and supervisors.  While her ability to understand, recall and complete tasks and expectations did not appear to be impaired, she did have some impairment of her ability to maintain concentration. He added that she may often be distracted and her effectiveness and performance will likely be limited or slowed, and her ability to withstand the normal stressors associated with a workplace setting is somewhat impaired (Exhibit 9F).  I gave great weight to this assessment because Dr. Brady, as a medical provider who performs consultative examinations, is knowledgable [sic] about the Social Security Administration's disabilty [sic] program.  Furthermore, his assesssment [sic] is consistent with the record as a whole in that Ms. Derocher's impairments warrant only routine prescripion [sic] of medications by primary care physicians, and have not signficanlty [sic] interfered with her activities of daily living.

(Tr. 29, 31).

The undersigned finds that the RFC properly accounts for Dr. Brady's

opinion.  While Dr. Brady noted that plaintiff's ability to maintain concentration is

27

"somewhat impaired" and that she may often be distracted and her performance

slowed, Dr. Brady also opined that she retained the ability to understand, recall,

and complete tasks and expectations. (Tr. 1066). Dr. Brady did not limit his

opinion to plaintiff's "somewhat" impaired concentration. The ALJ assessed an

RFC which included a limitation to performing simple and routine tasks, and

making simple, work-related decisions. The RFC further includes that plaintiff can

frequently respond appropriately to supervisors, co-workers and the public, and

can tolerate only simple changes in a work-related routine (such as changing the

time for a lunch break), not inconsistent with Dr. Brady's opinion. (Tr. 26). It was

not error for the ALJ to find, as did Dr. Brady, that plaintiff could understand and

complete tasks, and further limited plaintiff to simple, routine tasks, likely to

account for a "somewhat" impaired ability to concentrate. Dr. Brady's opinion

itself seems to reconcile the two opinions: although plaintiff is somewhat impaired

in concertation and may often be distracted, she is able to understand, recall, and

complete tasks and expectations.

The Commissioner points to State agency physician Dr. Newhouse's opinion

on the Disability Determination Explanation form. Dr. Newhouse found that

plaintiff's ability to maintain attention and concentration for an extended period

was not significantly limited. (Tr. 102). Dr. Newhouse also discussed Dr. Brady's

opinion (referring to a "MSS" opinion) in his RFC explanation.  (Tr. 103, 1066).

In explaining the mental RFC, Dr. Newhouse stated,

> Major depressive disorder recurrent moderate with some limitations in concentration MSS is noted [Dr. Brady's opinion] and suggests her abllility [sic] to interact with others, understand, complete and recall tasks do not appear significantly impaired.  Her concentration is somewhat impaired and her effectiveness and performance may be limited and slowed.  This appears consistent with totality of the MER and is given great weight.  ADL limitations show lack of motivation and physical allegations cause most of the limitations.  Claimant may have trouble with complex detailed tasks and function best in small familiar groups.  Retains the ablilty [sic] to do simple tasks on sustained basis.

(Tr. 103).  Thus, despite Dr. Brady's opinion on concertation, and similar to Dr. Brady, Dr. Newhouse concluded that plaintiff retained the ability to do simple tasks on a sustained basis.  (Tr. 103).  The ALJ also relied on Dr. Newhouse's opinion.  (*See* Tr. 32).

Having discussed Dr. Brady's entire opinion and considering Dr. Newhouse's opinion, the plaintiff's argument that the ALJ failed to show how she could complete simple tasks when she has a concentration impairment is unavailing.  The ALJ relied on the opinions of both physicians who concluded that despite a concentration impairment, plaintiff could complete tasks.  The undersigned finds no error in the ALJ's RFC assessment as it relates to mental impairments.  *See, e.g., Taylor v. Comm'r of Soc. Sec.*, 2011 WL 2682682, at *9

(E.D. Mich. May 17, 2011) (Although the main issue was whether the hypothetical question to the vocational expert accurately portrayed the claimant's limitations, relevant to this case, the court concluded that because the ALJ relied on the expert opinions to reach his conclusion that the plaintiff had moderate limitations in concentration, persistence and pace, it was reasonable for the ALJ to also rely on the ultimate conclusion in the PRFT that the plaintiff could perform unskilled work on a sustained basis); *Hess v. Comm'r of Soc. Sec.*, 2008 WL 2478325, at *7 (E.D. Mich. June 16, 2011) (same).

### 3. Requesting Records

Plaintiff contends that the ALJ failed to rule on and failed to provide plaintiff with the requested assistance in obtaining treatment records from Dr. Komorowski. (Dkt. 15 at p. 15). On January 19, 2016, plaintiff's counsel received Dr. Komorowski's refusal to provide requested treatment records without payment of the fee. On that same day, counsel submitted a letter to the ALJ requesting assistance in obtaining the documents, and repeated the request in the hearing brief. At the hearing, the ALJ asked counsel about the records and noted that Dr. Komorowski was not refusing to provide the records, but rather that he would not provide them unless plaintiff paid. (*Id.* at p. 16). 20 C.F.R. § 404.512(d) provides that the Commissioner will make a reasonable effort to help the plaintiff obtain records. (*Id.* at p. 16, citing *D'Amore v. Commissioner*, 173 Soc. Sec. Rep. Serv.

520; 2011 WL 6934715 (E.D.N.Y. 2011)(ALJ erred in not issuing subpoena for medical records plaintiff could not afford.); *Sowells v. Astrue*, 190 Soc. Sec. Rep. Serv. 547, 2013 WL 2471681 (W.D.La. 2013)(failure of ALJ to issue requested subpoena grounds for remand); *Strunk v. Astrue*, 165 Soc. Sec. Rep. Srv. 217, 2011WL 1584343 (Okla 2011)(ALJ failed to develop record by refusing to issue subpoena for records). Plaintiff states that she was denied a full and fair hearing and was denied her right to a complete record.

The Commissioner contends that the ALJ was not required to obtain Dr. Komorowski's medical records because plaintiff made no showing that the documents might be significant. (Dkt. 16, at p. 14). The Commissioner explains that the ALJ did not have a heightened duty to develop the record because plaintiff was represented and because the ALJ did not discuss that the evidence from Dr. Komorowski was important to the resolution of the claim. (*Id.* at p. 15-16, citing *Strang v. Comm'r of Soc. Sec.*, 611 F. App'x 271, 275 (6th Cir. 2015)).

Generally it is a claimant's duty to provide "*medical evidence* showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. *Mullen v. Comm'r of Soc. Sec.*, 2015 WL 1530778, at *10 (E.D. Mich. Mar. 31, 2015) (quoting 20 C.F.R. § 416.912(c) (as effective on March 1, 2016, the date of the ALJ decision). The regulations further provide,

> (d) Our responsibility. Before we make a determination
> that you are not disabled, we will develop your complete

medical history for at least the 12 months preceding the
month in which you file your application unless there is a
reason to believe that development of an earlier period is
necessary or unless you say that your disability began
less than 12 months before you filed your application.
We will make every reasonable effort to help you get
medical reports from your own medical sources when
you give us permission to request the reports.

(1) Every reasonable effort means that we will make an
initial request for evidence from your medical source
and, at any time between 10 and 20 calendar days after
the initial request, if the evidence has not been received,
we will make one followup request to obtain the medical
evidence necessary to make a determination....

The ALJ has a heightened duty to develop the record where the plaintiff is

unrepresented by an attorney. *Lashley v. Sec'y of Health & Human Servs.*, 708

F.2d 1048, 1051 (6th Cir. 1983).  The Commissioner correctly notes that the ALJ

in this case did not have heightened duty to develop the record as plaintiff was

represented by an attorney throughout the proceedings.  Nevertheless, the

Regulation does not appear to tie the ALJ's responsibility in this regard only to

situations where a heightened duty is triggered.

Although plaintiff requested assistance in obtaining Dr. Komoroski's

records, it does not appear that the ALJ made any effort in obtaining them.  After

the ALJ's discussion with plaintiff's attorney at the administrative hearing,

wherein it became clear that Dr. Komoroski would provide the records if plaintiff

paid for them, there is no other mention from the ALJ of these records.  Indeed, the

ALJ did not inquire as to the probable content of the records or their importance to the ALJ's determination.  As such, it would appear that the ALJ erred.

However, the undersigned notes that plaintiff made no attempt to characterize the records expected from Dr. Komorowski.  As the patient, she would know what she was treated for, and could have provided some insight into the probable or possible content of the records.  Plaintiff has provided no further illumination as to the expected content of Dr. Komorowski's records in the instant briefing.  In plaintiff's Disability Report, she reported that she was referred to Dr. Komoroski on February 15, 2014 for her osteomyelitis.  (Tr. 324).  The record regarding her osteomyelitis appears to be limited to her right index finger.  (Tr. 1085, 1092, 1100).  Thus, it reasonably may be inferred that Dr. Komoroski's record pertains to plaintiff's right index finger.  The ALJ considered plaintiff's testimony that she could no longer bend her right index finger after being treated for the infection (Tr. 27), and found that by March 19, 2014, she had only some right hand tenderness on examination.  (Tr. 28, 1147).

In order to show error that requires remand, plaintiff has the burden of demonstrating prejudice caused by the ALJ's error.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009).  Without a showing of prejudice or a deprivation of substantial rights, the Court will not remand the case back to the Commissioner.  *Id.*  The circumstances present in this case do not require remand

on this issue.  In *Strang v. Comm'r of Soc. Sec.*, 611 Fed.Appx. 271 (6th Cir. 2015),

the ALJ represented to the plaintiff at the administrative hearing that she would

obtain certain recently created documents from the plaintiff's treating physician,

and then failed to do so.  The Sixth Circuit held that remand was warranted on this

basis because "by telling [the plaintiff] she would procure certain documents for

the record and then failing to follow through, the ALJ effectively deprived [him] of

a full and fair hearing."  *Id.* at 275.  The court acknowledged that

the prejudice requirement meant that such claims were generally subject to

a harmless-error analysis, but explained that an ALJ "self-imposes a special duty to

obtain records" where the ALJ notes the importance of the records to the resolution

of the claim, but does not obtain the records.  *Id.* at 276.

Here, the ALJ made no representation that she would obtain the records, nor

did the ALJ state that the records were important to the resolution of the case.  As

discussed, there are records before and after the date plaintiff apparently saw Dr.

Komoroski regarding her right index finger, such that it cannot be said that there is

a gap in the medical record that needed to be filled.  *See, e.g., McDaniel v.

Berryhill*, 2017 WL 1371097, at (7 (E.D. Mich. Apr. 17, 2017) (Finding prejudice

in ALJ's failure to obtain records for the plaintiff where, in part, there was a gap in

the record on plaintiff's knee surgery).

The out-of-circuit authority on which plaintiff relies is distinguishable and does not compel a different conclusion.  In *Strunk v. Astrue*, 2011 Wl 1584343 (N.D. Okla. Apr. 26, 2011), the court held that the ALJ erred because he did not subpoena a treating physician's records despite plaintiff's counsel' explanation of their importance, and because the ALJ found plaintiff not credible in part because of a lack of medical evidence supporting her claims.  *Id.* at *3.  In *Sowells v. Astrue*, 2013 WL 2471681 (W.D.La. June 7, 2013), the court found error where the ALJ did not subpoena the consultative examiner for testimony at the hearing, thereby depriving the plaintiff of the opportunity to cross-examine an expert the ALJ later relied on.  *Id.* at *2-3.  In *D'Amore v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 149820 (E.D.N.Y. Dec. 30, 2011), the ALJ erred where he found plaintiff disabled despite gaps in the medical record, which were further created because the ALJ refused to subpoena plaintiff's worker's compensation records from her previous attorney.  *Id.* at *19.  These circumstances are not present here.

Plaintiff has not demonstrated how her case is prejudiced by the absence of Dr. Komoroski's records.  Therefore, the undersigned cannot say that the error here requires remand.

### 4.   Sentence Six

Plaintiff argues that new and material evidence requires remand for further consideration of six sets of medical records.  (Dkt. 15, at p. 18).  Plaintiff also

submits that she had good cause for not submitting the records prior to the hearing.

The Commissioner argues that plaintiff has not demonstrated that she is entitled to

a sentence six remand because these records are not material and do not

demonstrate that plaintiff's conditions lasted twelve months.  (Dkt. 16, at p. 16-21).

"Sentence six of § 405(g) addresses situations where a Claimant submits

new evidence that was not presented to the ALJ but would alter the ALJ's ultimate

decision."  *Courter v. Comm'r of Soc. Sec.*, 479 Fed. Appx. 713, 725 (6th Cir.

2012).  Sentence Six provides that the court may at any time

> order additional evidence to be taken before the
> Secretary, but only upon a showing that there is new
> evidence which is material and that there is good cause
> for the failure to incorporate such evidence into the
> record in a prior proceeding, and the Commissioner of
> Social Security shall, after the case is remanded, and after
> hearing such additional evidence if so ordered, modify or
> affirm the Commissioner's findings of fact or the
> Commissioner's decision, or both.

42 U.S.C. § 405(g).  Evidence is new if it was not in existence at the time of the

hearing.  *See Foster*, 279 F.3d at 357.  "Material evidence is evidence that would

likely change the Commissioner's decision."  *Bass*, 499 F.3d at 513 (citation

omitted).

### a.      Visiting Nurse Records

Plaintiff submitted records from the McLaren Visiting Nurse on February

25, 2016, just before the March 1, 2016 ALJ decision was issued, but the ALJ did

not consider these records (the records appear at Exhibit 21F, but the ALJ's list of evidence stops at Exhibit 18F. (Tr. 38-40)). Plaintiff states that these records document that she required in-home care from October 8, 2015 through December 28, 2015. (Dkt. 15, at p. 18). Plaintiff contends that the records are relevant because they show that plaintiff's septicemia and sequelae were severe impairments and expected to last for twelve consecutive months. In a letter to the Appeals Council, plaintiff's counsel contended that counsel made every reasonable effort to submit the records prior to the decision, but for "reasons not known to claimant" they were not made part of the record. (Dkt. 16, Exhibit 1). The Commissioner does not contest that plaintiff had good cause for not submitting the records before the date of the hearing (or in enough advance of the ALJ decision).

Beyond plaintiff's counsel's statement that he did not know why the records were not made part of the medical record, there is no showing of good cause for the failure to submit them prior to the hearing. However, even if plaintiff demonstrated good cause, the undersigned agrees with the Commissioner that the records are not material.

First, plaintiff contends that the records demonstrate that plaintiff's septicemia and sequelae were expected to last for twelve months. These records span from October 8, 2015 through December 28, 2015. The ALJ considered plaintiff's problems in relation to her septicemia covering this time span. (Tr. 23).

These records do not demonstrate that her conditions persisted past her gallbladder surgery in January 2016.  Thus, they do not show that plaintiff's conditions were expected to last twelve consecutive months.

Second, these records demonstrate that plaintiff's condition apparently improved during the period for which she had home health care.  For example, on November 6, 2015, a nurse reported that plaintiff had more energy, had gotten herself dressed and her hair brushed.  (Tr. 1449).  Plaintiff reported joint pain and pain near the drain that had been inserted in her abdomen for her gallbladder, but also reported that her appetite was good.  (*Id.*).  By December 5, 2015, plaintiff was refusing therapy, refused "telehealth monitoring," stated that her pain was managed with medication, and refused home health care because "she is able to do for self."  (Tr. 1452).  Rather than demonstrating a severe impairment that would last twelve consecutive months, these records show improvement and only that plaintiff received home health care for two months following her septicemia hospitalization.  Therefore, the undersigned concludes that these records are not material as they would not likely change the ALJ's decision at Step Two.

> b. West Branch Medical Center, ER, March 13-14, 2016

Plaintiff states that she submitted these records to the Appeals Council, which are relevant to the issue of whether her septicemia and sequelae was a severe impairment and expected to last twelve months.  (Dkt. 15, at p. 19-20).

Plaintiff provides no good cause for not submitting the records sooner, although it is clear that she did not go to the emergency room until after the date of the ALJ's decision. The Commissioner does not contest good cause. The Sixth Circuit requires that a plaintiff give a valid reason for her failure to obtain evidence prior to the administrative hearing. *Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551, 554 (6th Cir.1984). Even if plaintiff demonstrated good cause, the records are not material.

Plaintiff presented to the hospital with atrial fibrillation. (Tr. 1501, 1506). These hospital records indicate that plaintiff forgot her medication while on vacation (Tr. 1506), and that her atrial fibrillation resolved on March 13th. (Tr. 1508). This evidence does not establish that plaintiff's sequelae was expected to last twelve months. First, plaintiff was hospitalized for septicemia in September 2015, and the subject record indicates that this episode of atrial fibrillation resolved quickly after admission to the emergency room in March 2016, less than twelve months after her initial hospitalization. Second, these records make clear that plaintiff experienced heart problems because she forgot her medication on vacation, but resolved after taking the medication Lopressor. (Tr. 1508).

Accordingly, it does not appear that this episode of atrial fibrillation was connected to her septicemia and sequelae or shows that those conditions were expected to last twelve consecutive months. As such, the undersigned concludes

that the records are not material because they would not likely lead to a different conclusion at Step Two.

        c.     McLaren Bay Medical Center, ER, March 15, 2016

According to plaintiff, she went to the hospital on March 15, 2016, with complaints of pain in multiple joints.[7] The physician administered pain medication and diagnosed acute polyarthritis with suspect rheumatological disease origin. (Dkt. 15, at p. 20). Plaintiff asserts that this record documents a continuing condition from prior to the date of the ALJ's decision and shows non-conservative treatment which supports Dr. Malik's opinion. (*Id.* at p. 20-21).

This record contains evidence that is cumulative, rather than material. On March 15th plaintiff presented to the emergency department for joint pain. (Tr. 1520, 1521, 1523). Plaintiff is correct that the physician diagnosed acute polyarthritis and "suspect rheumatological origin" and administered pain medication. (Tr. 1526, 1528). However, the record before the ALJ contained numerous references to joint pain and polyarthropathy, for example, in Dr. Malik's and Dr. Prakash's notes, as discussed above. The ALJ also noted plaintiff's 2015 treatment records from Dr. Akbar which noted her history of gout, polyarthralgias, and chronic low back pain, but also noted that plaintiff had a normal gait and

---

[7] This evidence is new in that it did not exist prior to the hearing. The Commissioner makes no argument that plaintiff did not have good cause to bring this evidence after the hearing.

station. (Tr. 1207, 1214). As noted above, these physicians prescribed medication for her joint pain. In light of the evidence before the ALJ, and the ALJ's discussion of plaintiff's joint problems, this March 15, 2016 evidence is cumulative of evidence already present in the record, rather than new and material. As such, the case should not be remanded for consideration of this evidence. *See e.g. See Longworth v. Comm'r of Soc. Sec.*,402 F.3d 591, 598 (6th Cir. 2005) (declining to overturn the district court's holding that remand was unnecessary where the evidence was "largely cumulative of evidence and opinions already present on the record."); *Stevens v. Astrue,* 839 F.Supp.2d 939, 951 (S.D. Ohio 2012) (concluding that evidence that the plaintiff "continued to complain of back pain" was cumulative and did not warrant a remand under Sentence Six).

Further, this treatment note does not undermine the ALJ's conclusion that Dr. Malik's opinion is inconsistent with Dr. Malik's conservative treatment. That plaintiff went to the hospital after her treatment relationship with Dr. Malik had ended, and nearly three years after Dr. Malik issued his opinion, does not alter Dr. Malik's conservative treatment. And, as concluded above, even if this hospital visit could be attributed to Dr. Malik's treatment, the ALJ gave other good reasons supported by substantial evidence to discount Dr. Malik's opinion.

Because this record is cumulative of evidence already present before the ALJ, the undersigned finds that remand would be inappropriate.

d.    Dr. Diola

Dr. Diola treated plaintiff on a referral on December 13, 2015 for joint pain

and gout.  (Tr. 1434).  Plaintiff argues that Dr. Diola's clinical findings of a gout

flare-up and joint swelling and tenderness are material because they support Dr.

Malik's opinions.  (Dkt. 15, at p. 21-22).  Plaintiff contends she has good cause for

not submitting the record sooner: counsel requested the record on January 26,

2016, but Dr. Diola's office on February 4, 2016 stated that they had no patient

named Melissa Derocher.  (Dkt. 15, at p. 21).  However, counsel later came across

Dr. Diola's records contained in evidence received from Dr. Akbar on June 22,

2016, and realized that Dr. Diola's office had made a mistake.  The Commissioner

does not contest that plaintiff had good cause for submitting this record after the

decision, but argues that the record is not material because the physical

examination showed mild tenderness and swelling, unrestricted hip rotation, and

full forward arm raising.  (Dkt. 16, at p. 20-21) (Tr. 1435-36).

The undersigned agrees with the Commissioner that these records do not

support Dr. Malik's opinion, and thus are not material.  Dr. Diola noted plaintiff's

complaints of joint pain and swelling, especially in her elbows and hands.  (Tr.

1434, 1435).  Dr. Diola also noted that plaintiff largely had not been compliant

with her medications, that pizza triggers a gout attack, and that heat helps to soothe

her joint pains and loosen her joints.  (*Id.*).  Dr. Diola assessed gout and

rheumatoid arthritis and continued plaintiff on her medications.  This record does

not support Dr. Malik's opinion that plaintiff is severely functionally limited by her

joint problems.  That Dr. Diola noted pain and swelling in some joints is not a new

finding in the record and this finding by itself does not support the severe

limitations.  Rather, this record is merely cumulative of evidence of joint pain and

swelling already before the ALJ, and as discussed above, the ALJ considered

plaintiff's joint pain and swelling, and found her gout to be a severe impairment.

Because this record does not support Dr. Malik's opinion and is merely cumulative

of evidence already in the record, the undersigned concludes that it is not material

as it would not likely direct the ALJ to come to a different conclusion.  *See*

*Longworth* and *Stevens*, *surpra*.

> e.     Dr. Akbar

Plaintiff states that three of Dr. Akbar's records, dated October 21, 2015,

December 7, 2015, and February 18, 2016, support plaintiff's contention that her

septicemia and sequelae are severe impairments and expected to last for twelve

consecutive months, but were not included in the record before the ALJ.  (Dkt. 15,

at p. 22).  Plaintiff offers no justification in her brief for the failure to obtain these

records before the hearing, i.e. good cause for submitting these records after the

hearing and decision.  However, included with these three treatment records in the

record is a letter from plaintiff's counsel to the Administration indicating that he

requested the records on January 19, 2016 and did not hear back.  (Tr. 1482).

Plaintiff again requested the records on March 17, 2016, 16 days after the ALJ

rendered her decision.  Plaintiff successfully requested the records on May 25,

2016, receiving them in June.  The Commissioner does not contest that plaintiff

had good cause for not submitting the records sooner.

Because these records are from October 2015 through February 2016, they

existed before the ALJ rendered his decision, raising a question as to their

"newness."  *See Foster*, 279 F.3d at 357.  Further, although the Commissioner does

not contest good cause, the undersigned is concerned that waiting nearly two

months (and over two weeks after the ALJ decision) to re-request the evidence

does not establish good cause.  At the administrative hearing, the ALJ agreed to

keep the record open until the decision came out.  (Tr. 46).  There is no indication

in the record that plaintiff's counsel requested more time to submit Dr. Akbar's

records after realizing that Dr. Akbar's office was being less than helpful in his

pursuit.  *See Zizzo v. Comm'r of Soc. Sec.,* 2013 WL 5291663, at *14 (E.D. Mich.

Sept.19, 2013) (concluding that plaintiff has not established "good cause" for

remand because, "[w]hile plaintiff alludes to some vague difficulties obtaining

records from the VA, there is no explanation as to why some records were able to

be submitted during the 45 day period the ALJ kept the record open after the

hearing"); *see also Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966

(6th Cir. 1986) (Holding that a claimant must give a valid reason for failure to obtain the evidence prior to the hearing).

Even if plaintiff had good cause for submitting the records so late, the records are not material. The records show normal cardiovascular and pulmonary examination (Tr. 1485, 1490, 1495). These records do not contain other notes or findings related to plaintiff's septicemia and sequelae. Indeed, Dr. Akbar noted plaintiff's hospitalization for these conditions and noted that she had improved. (Tr. 1485). In the February 8, 2016 record, Dr. Akbar does not even mention the septicemia hospitalization in the "History of Present Illness" report. (Tr. 1493). These notes do, however, discuss plaintiff's gout, polyarthritis, and pain, but offer no new information regarding these issues that was not already before the ALJ. For example, Dr. Akbar noted chronic pain and slow gait, but these notations are not new as Drs. Malik and Prakash also noted pain in their records, as discussed above. (Tr. 1485). Rather, these records are cumulative and thus are not subject to a sentence six remand. *See Longworth* and *Stevens*, *supra*. These records also do not show that plaintiff's conditions were expected to last twelve consecutive months, as her septicemia and sequelae were apparently no longer an issue in February 2016, only five months after her initial hospitalization for septicemia.

f.      McLaren Bay Medical Center Records

Plaintiff submitted medical records from an October 12, 2015 emergency department visit and for an admission to the hospital October 26 through November 1, 2015.  (Exhibit 19F).  She contends she has good cause for not submitting the records before the ALJ's hearing because these records were not included in evidence McLaren sent in response to an earlier request.  (Dkt. 15, at p. 23).  Plaintiff became aware that these records were missing when she received Dr. Akbar's treatment records in June 2016.  The Commissioner does not contest that plaintiff had good cause for submitting these records after the hearing and ALJ decision.

Notably, plaintiff does not argue how or why these records are material. "[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997); *see also Marko v. Comm'r of Soc. Sec.*, 2017 WL 3116246, at *3 (E.D. Mich. July 21, 2017) (citing *Jones v. Comm'r of Soc. Sec.*, 2013 WL 4748083, at *8 (N.D. Ohio Sept. 4, 2013) ("[I]t is not the Court's function to search the administrative record for evidence to support [Plaintiff's] 'argument' or find law supporting [his or] her claims.  This Court does not conduct a de novo review in social security

proceedings, and certainly cannot be expected to craft an argument on [Plaintiff's] behalf.")).

Even if these records were "new" and plaintiff provided good cause for their late submission (she likely did, and the Commissioner does not argue otherwise), to the extent plaintiff believes that these records demonstrate that her septicemia and sequelae would last twelve consecutive months, this is incorrect. At most, the records demonstrate that plaintiff's condition, for which she was hospitalized in September 2015, lasted until November 1, 2015, when she was discharged from the hospital in stable condition. The October 12th emergency department record does not appear to attribute this hospitalization to her septicemia or sequelae. Plaintiff presented with orthostatic hypotension. (Tr. 1414). She assessed with mild hypotension "probably again some water wash-out." (Tr. 1415). In this record the physician notes that plaintiff had been drinking a large amount of water without getting any electrolytes, and was negative for shortness of breath. (Tr. 1414). Her lungs, heart, and extremities were normal. (Tr. 1414). Her hypotension was attributed to "water wash-out." (Tr. 1415). This record does nothing to demonstrate that her septicemia and sequelae were expected to last twelve months.

Her hospital admission from October 26 through November 1, 2015, was for her gallbladder, which she had surgically removed in January 2016. (Tr. 1416, Tr.

23 (noting that plaintiff testified that she underwent gallbladder removal surgery in January 2016)).  During this admission, physicians noted plaintiff's cholecystectomy tube was in good position with only minimal tenderness at the tube site (Tr. 1417), and although she was having trouble with her gallbladder (but denied chest pain or shortness of breath (Tr. 1424)), this is not new information added to the record.  It is not material that plaintiff had trouble with her gallbladder in October 2015, as she presented to the hospital in September with cholecystitis and had her gallbladder removed in January 2016.  Plaintiff's gallbladder trouble is documented in the record before the ALJ.  Further, by October 27th, she reported no further abdominal pain and she was feeling much better.  (Tr. 1428).  Antibiotics resolved her fever and fatigue.  (Tr. 1429).  She was discharged on November 1 in stable condition.  (Tr. 1430).  These records do not demonstrate that plaintiff's conditions were expected to last twelve consecutive months.  These merely demonstrate gallbladder problems in October, before she had her gallbladder removed.  As such, they are not material because they would not likely alter the ALJ's determination at Step Two.  *See Bass*, 499 F.3d at 513.  Further, the records are cumulative.  Therefore, the undersigned concludes that remand is not warranted.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 31, 2018                 s/Stephanie Dawkins Davis
                                      Stephanie Dawkins Davis
                                      United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 31, 2018, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record.

                                      s/Tammy Hallwood
                                      Case Manager
                                      (810) 341-7850
                                      tammy_hallwood@mied.uscourts.gov